IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Thomas Paul Kraus, ) | |
| ) | Civil Action No. 6:12-cv-2935-TMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff, who is proceeding *pro se*, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits ("DIB") on June 2, 2009, alleging that he became unable to work on March 1, 2008. The application was denied initially and on reconsideration by the Social Security Administration. On April 27, 2010, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff, his attorney, and Carey A. Washington, an impartial vocational expert,

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

appeared on October 28, 2010, considered the case *de novo*, and on January 28, 2011, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on August 10, 2012. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant will meet the insured status requirements of the Social Security Act through December 31, 2013.
>
> (2)    The claimant has not engaged in substantial gainful activity since March 1, 2008, the alleged onset date (20 C.F.R § 404.1571 *et seq*).
>
> (3)    The claimant has the following severe impairments: myofascial pain, degenerative disc disease of the lumbar spine, left wrist carpal tunnel syndrome, arthritis of the right knee, and degenerative disc disease of the cervical spine (20 C.F.R. § 404.1520(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with some limitations. Specifically, the claimant can sit for a total of six hours in an eight-hour day with normal breaks; can stand and walk for a total of two hours in an eight-hour day for fifteen minutes at a time; can lift and carry ten

pounds occasionally, meaning up to one third of a workday, and less than ten pounds frequently, meaning up to two thirds of a workday; can push and pull within the aforementioned weight limits; can occasionally operate foot controls with the lower extremities; must avoid climbing ropes ladders and scaffolds; must avoid crawling and kneeling; can perform other postural activities occasionally; must avoid overhead reaching more than one fifth of the workday; must avoid machinery, unprotected heights, exposure to extreme heat or cold; must avoid commercial driving; and must avoid repetitive bending, lifting, twisting and turning. Additionally, he would have a maximum weightlifting capacity of 30 pounds.

(6)     The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7)     The claimant was born on January 17, 1971, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. § 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)).

> (11)  The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2008, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2)  has a severe impairment, (3)  has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4)  has an impairment that prevents past relevant work, and (5)  has an impairment that prevents him from doing substantial gainful employment.  20 C.F.R. § 404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3.  The plaintiff bears the burden of

establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

On July 28, 2009, Dr. Jean Smolka, a state agency physician, reviewed the medical evidence of record and assessed the plaintiff's physical residual functional capacity ("RFC"). Dr. Smolka opined that the plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently; stand or walk for two hours in a normal workday; sit for six hours in a normal workday; perform occasional postural activities except that he could never climb ropes, ladders, or scaffolds; and would be limited to occasional overhead reaching (Tr. 441-51).

The plaintiff was seen by Dr. Rakesh Chokshi, an orthopedist, on February 10, 2010, for an independent medical evaluation "through his workers compensation company." Dr. Chokshi noted the plaintiff's history of a transforaminal lumbar interbody fusion at L5,S1 in 2009. On examination, he found that the plaintiff had limited range of motion of the lumbar spine, motor strength 5/5 in all major muscle groups, and some minimal sensory paresthesias in the L5 distribution left side (Tr. 464-65). Dr. Chokshi saw the plaintiff again on February 17, 2010, at which time he reviewed the plaintiff's latest MRI of the lumbar spine, which was done in September 2009. Dr. Chokshi noted that there was a questionable annular tear at L4-5 with high intensity zone, there was no external compression on the nerve, and there was some very mild changes of facet arthropathy at L3-4, L4-5 (Tr. 462-63). Dr. Chokshi discussed treatment options with the plaintiff, as well as the side effects and benefits of medications (Tr. 462). Dr. Chokshi did not believe that additional surgery was required, and he opined that the plaintiff had reached maximum medical improvement (Tr. 463). On April 21, 2010, Dr. Chokshi opined that the plaintiff would be limited to work involving no repetitive bending, lifting, twisting, or turning. He further found that the plaintiff could lift a maximum of 30 pounds (Tr. 734).

On June 8, 2010, the plaintiff was seen by Dr. A. Mason Ahearn for an independent medical evaluation at the request of the plaintiff's attorney. Dr. Ahearn recommended that the plaintiff be limited to standing 15 minutes, walking 100 yards, and lifting no more than 20 pounds. Dr. Ahearn further opined that the plaintiff should avoid stooping, crawling, kneeling, repetitive lifting, climbing ladders, catwalks, or repeated flights of stairs, heavy physical labor involving his upper extremity, overhead work, and driving a commercial vehicle (Tr. 723-29).

On April 8, 2010, Dr. Wilson Hugh, a state agency physician, reviewed the evidentiary record and assessed the plaintiff's physical RFC. Dr. Wilson found that the plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently; stand or walk for two hours in a regular workday; sit for six hours in a regular workday; perform occasional postural activities except that he could never climb ropes, ladders, or scaffolds and could balance frequently; and would be limited to occasional overhead reaching. He also determined that the plaintiff would need to avoid concentrated exposure to extremes of temperature and all exposure to hazards secondary to medications (Tr. 480-87).

At the hearing, the plaintiff testified that he was unable to work due to lower leg and back problems, including pain (Tr. 51). He said that he experienced problems with nausea, being off balance, falling, headaches, and an inability to extend his neck fully (Tr. 58). The plaintiff testified that he had pain down his back and shoulders with limited motion in his lower back. He complained of being unable to keep pace and having trouble sleeping (Tr. 51). He stated that his medications made it hard to work, making him daydream and forget things (Tr. 59). The plaintiff explained that his wife drove him places most of the time, but that he drove to the hearing (Tr. 53). The plaintiff reported injuring himself in a work accident when a truck hit him. He stated that his leg pain was exacerbated by activity such as walking (Tr. 54). The plaintiff testified that he had experienced pain when reaching

7

(Tr. 52). He also reported taking two to three hour breaks three to four times a day due to pain and loss of balance (Tr. 64). The plaintiff said that he was able to stand for 15-20 minutes (Tr. 65). He reported that he was no longer able to play with his children without falling and that he could not sit to help them with their homework (Tr. 65). He testified that he needed his wife's help to shower (Tr. 66).

A vocational expert testified that, given the plaintiff's RFC, he would be unable to perform any of his past work as a garbage collector, deli worker, security guard, nurse's aid, truck driver, fast food cook, forklift operator, waiter, and trash picker/laborer (Tr. 68-74; *see* Tr. 32). The vocational expert testified that given the plaintiff's limitations he could perform the requirements of the following occupations existing in significant numbers in the national economy: weight tester (DOT # 539.485-010). surveillance system monitor (DOT # 378-367-010), addresser (DOT # 209.587-010), and telephone quotation clerk (DOT # 237.367-046) (Tr. 72-73; *see* Tr. 33.

## ANALYSIS

The plaintiff alleges disability commencing March 1, 2008, at which time he was 37 years old. He was 40 years old on the date of the ALJ's decision. The ALJ found that the plaintiff's myofascial pain, degenerative disc disease of the lumbar spine, carpal tunnel syndrome, arthritis of the the right knee, and degenerative disc disease of the cervical spine were severe impairments. The ALJ further determined that the plaintiff has the residual functional capacity to perform sedentary work with other limitations as set forth above. The plaintiff argues the ALJ erred by: (1) failing to properly evaluate the medical opinions in the record and (2) failing to fully develop the evidentiary record (pl. brief at 1-3).

*Medical Opinions*

The plaintiff argues that the ALJ failed to properly evaluate several medical opinions. The regulations require that all medical opinions in a case be considered, 20 C.F.R. §§ 404.1527(b), 416.927(b), and, unless a treating source's opinion is given

8

controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

The plaintiff first argues that the ALJ disregarded a report from "Dr." Philip Lowe (pl. brief at 1). Phillip Lowe is a physical therapist (Tr. 730). A physical therapist such as Mr. Lowe is not an "acceptable medical source," but an "other source." *See* 20 C.F.R. § 404.1513(a) (defining "acceptable medical sources"); SSR 06-03p, 2006 WL 2329939, at *4 (stating that the weight to be given to evidence from other sources "will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors"); *Craig v. Chater*, 76 F.3d 585, 586 (4th Cir. 1996) (ALJ did not err in failing to expressly consider the report of physical therapist, an "other source"). "[O]nly 'acceptable medical sources' can be considered treating sources, . . . whose medical opinions may be entitled to controlling weight." 2006 WL 2329939, at *2. The ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

While Mr. Lowe is not an acceptable medical source, the ALJ specifically considered his opinion, noting that there was no mention of weightlifting restrictions in Mr. Lowe's letter (Tr. 32). Mr. Lowe opined in a one-page letter that the plaintiff possessed an 80% impairment of the cervical spine and a 20% "whole person impairment" due to injuries in his lumbar spine (Tr. 730). Mr. Lowe's letter provided only summary conclusions regarding the plaintiff's percentage of functioning and did not explain how the plaintiff's impairments would affect his ability to perform specific work related activities (Tr. 730).

The plaintiff's attorney submitted Mr. Lowe's full report to the Appeals Council (Tr. 1-5; *see* Tr. 817-29). The Appeals Council considered the evidence and found no reason to review the ALJ's decision (Tr. 2, 5). Mr. Lowe opined in the Functional Capacity Evaluation dated October 12, 2010, that the plaintiff could constantly (defined as 67-100%

of the day) reach; frequently (defined as 34-66% of the day) stand, sit, climb, and kneel; and occasionally (defined as 1-33% of the day) walk, bend, squat, and crawl (Tr. 825). He further found that the plaintiff could occasionally lift a maximum of 35 pounds, frequently lift a maximum of 15 pounds, and constantly lift a maximum of six pounds (Tr. 826).

In *Meyer v. Astrue*, 662 F.3d 700, the Fourth Circuit stated that when the Appeals Council receives additional evidence and denies review, the issue for the court is whether the ALJ's decision is supported by substantial evidence. *Id*. at 707. Here, substantial evidence supports the ALJ's RFC assessment. The ALJ's RFC determination was consistent with the opinions of several acceptable medical sources, including Drs. Chokshi, Ahearn, Smolka, and Hugh. *See* 20 C.F.R. § 404.1527 ("Generally, the more consistent an opinion is with record as a whole, the more weight we will give to that opinion"). Furthermore, the limitations imposed by Mr. Lowe are consistent with the RFC found by the ALJ, which provided that the plaintiff could perform a limited range of sedentary work. Accordingly, this allegation of error is without merit.

Secondly, the plaintiff argues that the ALJ erred in identifying Dr. Chokshi as his "primary physician" as he only saw Dr. Chokshi one time (pl. brief at 1). The plaintiff further contends that the ALJ should have given great weight to opinion of his primary physician, Dr. Ahearn (*id.*).

The ALJ gave "great weight" to the opinion of Dr. Chokshi, noting that he was "a treating source." Dr. Chokshi opined that the plaintiff could lift a maximum of 30 pounds and should avoid repetitive bending, lifting, turning, or twisting (Tr. 724). The ALJ found the opinion to be consistent with the evidentiary record as a whole (Tr. 34). Substantial evidence supports the ALJ's finding in this regard. Dr. Chokshi's opinion is consistent with his clinical findings. Upon examination, Dr. Chokshi found the plaintiff to be in no acute distress with 5/5 motor strength in all major muscle groups and only minimal sensory paresthesias (Tr. 464-65). In a subsequent examination, Dr. Chokshi again found the

plaintiff to be in no acute distress (Tr. 462). Dr. Chokshi reviewed an MRI that revealed very mild changes of facet arthropathy, a questionable annular tear at L4-5, and no external nerve root compression (Tr. 462). Dr. Chokshi opined that the plaintiff had reached "maximum medical improvement" and did not require further surgical treatment (Tr. 463). Dr. Chokshi's opinion regarding the plaintiff's functional abilities is consistent with his minimal findings upon examination and is consistent with the opinions of the state agency physicians, Dr. Smolka (Tr. 441-51), and Dr. Hugh (Tr. 480-87), both of whom reviewed the evidentiary record as a whole and assessed limitations consistent with the ALJ's RFC determination. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("the testimony of a nonexamining physician can be relied upon when it is consistent with the record").

The plaintiff is mistaken in his assertion that the ALJ found Dr. Chokshi to be his "primary physician." Rather, the ALJ referred to him as a "treating source" (Tr. 30). The record shows that Dr. Chokshi examined the plaintiff on at least two occasions, albeit pursuant to a worker's compensation referral (Tr. 462-65). As argued by the Commissioner, even assuming Dr. Chokshi did not qualify as a "treating physician" or "treating source," he was unquestionably an examining source, and the ALJ properly considered his opinion in accordance with the factors outlined in 20 C.F.R. § 404.1527(c) (Tr. 30-31). As the ALJ applied the proper criteria in evaluating Dr. Chokshi's opinion, any error in the ALJ's labeling of Dr. Chokshi as a treating source is harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding).

The plaintiff further argues that the ALJ "should have given great weight" to the opinion of his "primary physician," Dr. Ahearn (pl. brief at 1). The plaintiff references Dr. Ahearn's opinion from June 8, 2010, when he performed an independent medical evaluation of the plaintiff. Dr. Ahearn opined that the plaintiff should be limited to standing 15 minutes and walking 100 yards, that he should not stoop, kneel, crawl, or access

12

restricted areas, and that he should be limited to lifting 20 pounds, no overhead work, and no commercial driving (Tr. 723-29).

While the plaintiff identifies Dr. Ahearn as his "primary physician" (pl. brief at 1), Dr. Ahearn's report recounts that he reviewed the plaintiff's medical history and notes that the plaintiff was treated by Dr. William L. Mills and "sees no other health care provider for his orthopedic problems" (Tr. 724-25). The undersigned has reviewed the record and has found no other treatment notes from Dr. Ahearn other than the report from the independent medical evaluation in June 2010. The ALJ afforded "great weight" to Dr. Ahearn's assessment (Tr. 30-31) and expressly incorporated the majority of the limitations found by Dr. Ahearn in the RFC determination (Tr. 26). The ALJ explained his reasons for not incorporating the limitation to no overhead work, noting that Dr. Ahearn's examination revealed the plaintiff had full range of motion in his upper extremities (Tr. 30; *see* Tr. 727). However, the ALJ did include a limitation on "overhead reaching more than one fifth of the workday" (Tr. 26). Furthermore, with regard to Dr. Ahearn's 20 pound weightlifting limit, the assessed RFC limited the plaintiff to sedentary work, which involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *See* 20 C.F.R. § 404.1567(a). Based upon the foregoing, the undersigned finds that the ALJ properly evaluated Dr. Ahearn's opinion and afforded it great weight, which is the very relief the plaintiff is seeking. Accordingly, his argument cannot constitute grounds for remand.

*Evidentiary record*

In his second argument, the plaintiff contends that the ALJ failed to include several documents in the administrative record. Specifically, he argues that the ALJ "did not ask for medical paperwork from [his] surgeon, Dr. William Mills, from the year 2008 on work issues and on what [his] limitations were" (pl. brief at 2). The record contains numerous treatment notes from Dr. Mills, who performed the plaintiff's lumbar fusion in

2009 (Tr. 371-72; *see also* Tr. 367-81, 3878-443, 454-60, 665-716, 731). While it is unclear what record from Dr. Mills the plaintiff claims is missing, the record does show that on March 7, 2008, Dr. Mills limited the plaintiff to light duty with no lifting greater than 10-15 pounds (Tr. 672), and on August 13 and September 29, 2009, he limited the plaintiff to light duty with "no lifting greater than 10-15 pounds with a max 4 hours a day" (Tr. 456, 731). These lifting restrictions are significantly consistent with the RFC assessment by the ALJ, which limited the plaintiff to lifting and carrying "ten pounds occasionally, meaning up to one third of a workday, and less than ten pounds frequently, meaning up to two thirds of a workday" (Tr. 26).

The plaintiff further contends that the ALJ neglected to include a list of medications and his military records in the administrative record (pl. brief at 2-3). The documents the plaintiff asserts should have been included in the record appear to regard his prior claim for disability benefits (pl. brief at 2-3). In his brief, the plaintiff states that there was a list of medication and military records in his prior claim file, which were not included in the instant record (*id.*). As argued by the Commissioner, the plaintiff's current disability claim concerns the period between his alleged onset date of March 1, 2008, and his date last insured of December 31, 2013 (Tr. 24), and any evidence relating to a prior claim for benefits, which would have concerned an entirely different time period under review, would be irrelevant to the instant appeal.

The plaintiff also argues that the ALJ erred in failing to "say anywhere in the decision that [his] injuries were due to an accident on the job that was caused by another's negligence" (pl. brief at 2). He further argues that the ALJ "should have put great weight in her decision based on exhibit 14E (SC Traffic Collision Report Form)" (*id.*). The form referenced by the plaintiff pertains to an accident on November 16, 2007, in which the plaintiff was struck by a vehicle while he was picking up trash with a sanitation crew (Tr. 234). The driver who hit the plaintiff was cited for careless operation of a vehicle (*id.*). It

is unclear how the fact that the plaintiff's injury was the result of another's negligence would be relevant to the issue of whether he is entitled to disability insurance benefits.

The plaintiff was represented by counsel at the administrative level (Tr. 22). At the hearing, the ALJ asked the plaintiff, through counsel, if he had reviewed the record and if there were additional records he sought to include. Counsel responded that he had reviewed the record and had "[n]othing additional" (Tr. 43). While an ALJ has the duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record," *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), "'[h]e is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.'" *Bell v. Chater*, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). The undersigned finds that the ALJ met her obligation here.

Based upon the foregoing, the undersigned finds that the plaintiff's allegations of error in this regard are without merit.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

December 9, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).